[Docket Nos. 102, 103, 105.]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>SHAROD THOMAS,<br><br>Defendant. | Crim. No. 12-378 (RMB)<br><br>**OPINION** |

**RENÉE MARIE BUMB, Chief United States District Judge:**

Defendant Sharod Thomas asks this Court for compassionate release. [Docket No. 103[1].] Thomas argues he meets the high bar of extraordinary and compelling circumstances for compassionate release because: (1) he has an unusually long sentence, and if he were sentenced today, he would not be considered a career offender; (2) his advanced age; (3) the COVID-19 pandemic; and (4) his rehabilitative efforts in prison support a sentence reduction.

This Court disagrees. Thomas misreads the controlling law on whether his prior controlled substance offenses qualify as predicate offenses for the career offender sentencing enhancement. His other proffered reasons are neither extraordinary nor compelling to justify compassionate release. Accordingly, the Court **DENIES** Thomas' motion for compassionate release.

**I.   BACKGROUND**

Thomas is a career drug-dealer. Starting in 2001, Thomas racked up several drug-trafficking convictions at the state-level. [PSR ¶¶ 39-41, 43-44.] He has multiple New

---

[1] Thomas has also moved for the appointment of counsel in connection with his motion for compassionate release. [Docket Nos. 102, 105.]

Jersey state convictions for possessing drugs with the intent to distribute within a school zone. [*Id.* at ¶¶ 39-40, 43.] He also has New Jersey state convictions for possessing and distributing drugs. [*Id.* at ¶¶ 41, 44.] On top of his drug-trafficking convictions, Thomas has New Jersey state convictions for aggravated assault and resisting arrest. [*Id.* at ¶ 41.] All told, Thomas spent about sixteen-and-a-half-years in prison for his various state convictions. [Sentencing Hr'g Tr. 16:22 to 17:4 (Docket No. 91).]

But Thomas' time in prison did not deter him from reoffending. In 2012, New Jersey law enforcement officers arrested Thomas after observing him engage in suspected drug deals. [PSR ¶¶ 13–15.] During the arrest, the officers recovered a black knit hat containing a loaded pistol, heroin, and marijuana. [*Id.* at ¶¶ 15-16.] The officers had observed Thomas retrieving items from this black knit hat during their surveillance. [*Id.* at ¶ 13.] That arrest caught the Federal Government's eye. A federal grand jury indicted Thomas for: (1) felon-in-possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); (2) possession with the intent to distribute heroin, in violation of 18 U.S.C. §§ 841(a)(1) and (b)(1)(C); and (3) possession of a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c). [Docket No. 26 (Superseding Indictment).] After a trial, the jury found Thomas guilty of each offense. [Docket No. 52.]

For those convictions, Thomas faced 360 months to life imprisonment because he qualified as a career offender. [PSR ¶ 83.] To qualify as a career offender under the Sentencing Guidelines, a defendant must have been 18 years old at the time of the instant offense, the instant offense must have been a controlled substance offense or a crime of violence, and he must have had two prior convictions for either a controlled substance offense or a crime of violence. U.S.S.G. § 4B1.1(a). Thomas' prior drug-trafficking convictions and

aggravated assault conviction qualified him as a career offender. [*Id.* ¶¶ 31, 39-41, 43-44, 83.] Even though a Sentencing Guidelines sentence for Thomas would have been 30 years to life in prison, this Court varied from the Guidelines and sentenced him to, in total, 250 months imprisonment with a five-year period of supervised release. [Docket No. 87.]

Thomas now moves for compassionate release, asking this Court for a sentence reduction because: (1) his sentence is unusually long; (2) his advanced age; (3) his rehabilitation in prison; and (4) the general changes in society following the COVID-19 pandemic. [Def. Mem. of Law in Supp. of Compassionate Release 2, 8 (Def. Br.) (Docket No. 103).] The Government opposes early release, arguing: (1) Thomas is a career offender, and as such, his sentence is not unusually long; (2) even if the law changed, a nonretroactive change to a sentencing law cannot be an extraordinary and compelling reason for early release; (3) Thomas' other proffered reasons for early release are neither extraordinary nor compelling; and (4) the 18 U.S.C. § 3553(a) factors do not favor early release. [Gov't Mem. of Law in Opp'n to Def. Mot. for Compassionate Release 8-23 (Gov't Opp'n Br.) (Docket No. 109).]

## II. THE FIRST STEP ACT AND COMPASSIONATE RELEASE

A judgment of conviction that includes a sentence is a final judgment that district courts may only modify in limited circumstances. *Dillon v. United States*, 560 U.S. 817, 824 (2010) (citing 18 U.S.C. § 3582(b)). In 2018, Congress passed the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018), giving incarcerated defendants an opportunity to pursue compassionate release if they establish "extraordinary and compelling reasons[]" for release. *United States v. Raia*, 954 F.3d 594, 595 (3d Cir. 2020) (internal quotation marks omitted) (quoting 18 U.S.C § 3582(c)(1)(A)(i)).

To obtain compassionate release under the First Step Act, an incarcerated defendant must show that: (1) he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier"; (2) extraordinary and compelling reasons warrant relief; (3) the factors set forth in 18 U.S.C. § 3553(a) support release; and (4) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . ." 18 U.S.C. § 3582(c)(1)(A)(i).

Congress tasked the Sentencing Commission to define "extraordinary and compelling reasons" that would justify compassionate release. 28 U.S.C. § 994(t). Over time, the Sentencing Commission has provided examples of extraordinary and compelling reasons that support a sentence reduction. *See generally United States v. Rutherford*, 120 F.4th 360, 364-65 (3d Cir. 2024), *cert. granted*, No. 24-820, 2025 WL 1603603 (U.S. June 6, 2025). In 2023, the Sentencing Commission amended the Policy Statement on compassionate release motions, listing the extraordinary and compelling reasons that justify compassionate release. U.S.S.G. § 1B1.13. Relevant here, the Sentencing Commission recognizes that an "unusually long sentence[,]" *id.* § 1B1.13(b)(6), the defendant's age, *id.* § 1B1.13(b)(2), and a defendant's rehabilitation in prison (coupled with other circumstances), *id.* § 1B1.13(d), may constitute extraordinary and compelling reasons for a sentence reduction.

Here, all agree that Thomas has exhausted administrative remedies. [Def. Br. at 12-13; Gov't Opp'n Br. at 8 n.1.] Thus, the Court must decide whether Thomas has shown extraordinary and compelling reasons to justify compassionate release. He has not. And the 18 U.S.C. § 3553(a) factors that this Court must consider do not support release.

4

### A. Extraordinary and Compelling Reasons

#### 1. Unusually Long Sentence

Thomas urges the Court to find that he has received an unusually long sentence. [Def. Br. at 2–4.] The Sentencing Commission recognizes a disproportionately long sentence may constitute extraordinary and compelling reasons to justify compassionate release. U.S.S.G. § 1B1.13(b)(6). The Policy Statement says:

> (6) UNUSUALLY LONG SENTENCE.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

*Id.*

Thomas claims there has been a change of law on the Sentencing Guidelines career offender sentencing enhancement. [Def. Br. at 2-3.] Pointing to *United States v. Boone*, 2022 WL 14558235 (D.N.J. Oct. 25, 2022), Thomas contends his prior convictions for possession of drugs with the intent to distribute are not predicate offenses for the career offender sentencing enhancement because those convictions do not qualify as a controlled substance offense under the Sentencing Guidelines. [*Id.*] Relying on *Boone*, Thomas argues the New Jersey statutes that he was convicted under are "broader" than the Federal Controlled Substances Act (CSA), and therefore, his New Jersey state drug-trafficking convictions cannot count toward the career offender sentencing enhancement. [*Id.*] Without that enhancement, the argument goes, Thomas would "not be facing an unusually long sentence[.]" [*Id.* at 4.]

Not so. *Boone* is no longer good law given the Third Circuit's decision in *United States v. Lewis*, 58 F.4th 764 (3d Cir.), *cert. denied*, 144 S. Ct. 489 (2023). When *Boone* was decided,

5

the Third Circuit had not addressed whether a "controlled substance" under the Sentencing Guidelines career offender sentencing enhancement must be a substance regulated by federal law, state law, or both. *Boone*, 2022 WL 14558235, at *5. *Boone* looked to decisions from district courts within the Third Circuit and out-of-circuit for guidance. *Id.* at *5-7. *Boone* specifically looked to a decision from a court in this District called *Lewis* where the court held that the term "controlled substance" as used in U.S.S.G. § 4B1.1(a) means only the substances defined in the CSA. *United States v. Lewis*, 2021 WL 3508810, at *10 (D.N.J. Aug. 10, 2021), *vacated and remanded*, 58 F.4th 764 (3d Cir. 2023). Relying on *Lewis* (and other decisions), *Boone* ruled that the defendant's New Jersey state conviction for possessing drugs with the intent to distribute within a school zone did not qualify as a "controlled substance" offense under the career offender sentencing enhancement because "New Jersey's controlled substance definition criminalize more substances than the CSA." *Boone*, 2022 WL 14558235, at *7. When *Boone* was decided, the Third Circuit had the Government's appeal in *Lewis* under consideration. *Id*. at *5 n.5.

*Boone* was short-lived. The Third Circuit vacated the district court's decision in *Lewis*, rejecting that court's holding that the term "controlled substance" as used in the Sentencing Guidelines means those substances only regulated by the CSA. *Lewis*, 58 F.4th at 768-69. The Third Circuit held that "[t]he meaning of 'controlled substance' as used in Guidelines § 4B1.2(b)'s definition of 'controlled substance offense' includes drugs regulated by state law at the time of the predicate state conviction, even if they are not federally regulated or are no longer regulated by the state at the time of the federal sentencing." *Id.* at 773. It explained that the "Guidelines definition of controlled substance offense in § 4B1.2(b)[]" has three parts: (1) an offense under federal or state law, (2) punishable by imprisonment for a term exceeding

6

one year, (3) that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance, or possession with the intent to do so." *Id.* at 768 (internal quotation marks omitted) (quoting U.S.S.G. § 4B1.2(b)). With that definition in hand, the Third Circuit found "a 'controlled substance' under § 4B1.2(b) is one regulated under state or federal law." *Id.* at 769. So *Lewis* abrogated *Boone*.

Given *Lewis*, Thomas still qualifies as a career offender under the Sentencing Guidelines because the law has not changed. Again, to qualify as a career offender, Thomas must have been at least 18 years old at the time of the instant offense, the instant offense must have been a controlled substance offense or a crime of violence, and he must have had two prior convictions for either a controlled substance offense or a crime of violence. U.S.S.G. § 4B1.1(a). Thomas has several prior convictions that qualify as "controlled substances offenses" for the enhancement. [PSR ¶¶ 39–41, 43–44.]

For example, he has two convictions for possession of cocaine with the intent to distribute within a school zone, and a conviction for distributing heroin within a school zone. [*Id.* ¶¶ 39-40, 43.] He also has a conviction for manufacturing, distributing, or dispensing controlled dangerous substances (crack cocaine and heroin). [*Id.* ¶ 44.] Those convictions were punishable by a sentence of imprisonment more than a year, the substances were regulated by New Jersey state-law, and the statutes that Thomas violated prohibited the possession of drugs with the intent to distribute, and the manufacturing, distributing, or dispensing of drugs. N.J. Stat. Ann. §§ 2C:35-5, 2C:35-7. Accordingly, those convictions qualify as controlled substance offenses for the career offender sentencing enhancement. *Lewis*, 58 F.4th at 768. On top of his drug-trafficking convictions. Thomas has an aggravated assault conviction, which is a crime of violence under the career offender sentencing

7

enhancement. U.S.S.G. § 4B1.2(a). So applying the career offender sentencing enhancement to Thomas was proper.

"The duration of a lawfully imposed sentence does not create an extraordinary or compelling circumstance[]" for compassionate release. *United States v. Andrews*, 12 F.4th 255, 260–61 (3d Cir. 2021) (collecting cases). Thomas' sentence falls within the Sentencing Guidelines. In fact, this Court showed Thomas leniency by varying from the Guidelines sentence of 30 years to life by sentencing him to 250 months. A sentence that was not only lawful as imposed, but lenient, cannot possibly be an extraordinary and compelling reason for early release. Because Thomas has not shown a change a law or that his sentence would have been different, Thomas cannot show his sentence is "unusually long" to support compassionate release. U.S.S.G. § 1B1.13(b)(6).[2]

### 2. Thomas' Age

Thomas argues in passing that his "maturing age" supports a sentence reduction. [Def. Br. at 8.] The Policy Statement recognizes that a defendant's age may be an extraordinary and compelling reason for release if the defendant is at least 65, is experiencing serious age-related deterioration in mental or physical health, and has served the lesser of 10 years or 75% of his or her sentence. U.S.S.G. § 1B1.13(b)(2).

Thomas cannot rely on this ground for compassionate release because he is not 65 years old (he's currently 52 years old, *see* PSR at 2 (listing Thomas's birthday as January 28,

---

[2] Because the Court does not find that the law has changed with respect to Thomas's career offender status, making U.S.S.G. § 1B1.13(b)(6) inapplicable, the Court need not reach the Government's argument about whether the Sentencing Commission exceeded its authority by allowing nonretroactive changes to sentencing laws to justify compassionate release. [Gov't Opp'n Br. at 11-17.] That said, the Third Circuit recently found that the Sentencing Commission's Policy Statement on unusually long sentences that would allow nonretroactive changes to sentencing laws to support compassionate release conflicted with Congress "specific directives" in the First Step Act. *Rutherford*, 120 F.4th at 376.

8

1973)), and he does not assert that he has any significant age-related deterioration of his physical or mental health. Thus, his age is not an extraordinary or compelling reason to justify compassionate release.

### 3. The Coronavirus Pandemic

Thomas also apparently seeks compassionate release based on the COVID-19 pandemic, arguing, very generally, "the living conditions and changed legal and institutional landscape since the COVID-19 pandemic[]" support an early release. [Def. Br. at 8.] Thomas does not elaborate on what changes he is referring to. At any rate, even if this Court construes Thomas' passing reference to COVID-19 to mean the risk that COVID-19 poses to inmates, Thomas still has not shown extraordinary or compelling reasons for compassionate release.

"[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *Raia*, 954 F.3d at 597. Thomas has not explained how any of his "personal health factors" increase his "risk of suffering severe medical complications or death as a result of exposure to" COVID-19. U.S.S.G. § 1B1.13(b)(1)(D). The COVID-19 pandemic—alone—is not an extraordinary or compelling reason to justify compassionate release.

### 4. Thomas' Rehabilitation Efforts in Prison

The Policy Statement recognizes that a defendant's rehabilitation "may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." U.S.S.G. § 1B.13(d). But rehabilitation alone is not an extraordinary and compelling reason to justify compassionate release. 28 U.S.C. § 994(t); *see also United States v. Bledsoe*, 2022 WL 3536493, at *2 (3d Cir.

9

Aug. 18, 2022) ("[C]laimed efforts in furtherance of rehabilitation, while commendable, are expected, . . . they are, standing alone, neither extraordinary nor compelling for purposes of the compassionate-release standard[.]" (citations and internal quotation marks omitted)).

Thomas has performed many rehabilitative activities during his imprisonment, like taking educational courses. [Def. Br. at 10–11, 15–17.] While Thomas' efforts to rehabilitate himself are commendable, those efforts alone cannot demonstrate extraordinary and compelling reasons to warrant compassionate release. *Bledsoe*, 2022 WL 3536493, at *2. Because the record lacks "other circumstances that could constitute extraordinary or compelling reasons for a reduction," Thomas' efforts toward rehabilitation do not support release. *United States v. Berrios*, 2025 WL 654160, at *4 (D.N.J. Feb. 28, 2025) (quoting *United States v. Gantt*, 2024 WL 3385493, at *3 (D.N.J. July 12, 2024)).

### B. The 18 U.S.C. § 3553(a) Factors Do Not Support Early Release

All the more reason to deny compassionate release are the 18 U.S.C. § 3553(a) factors that this Court must consider. They do not support early release.

Before granting compassionate release, courts must consider the § 3553(a) factors "to the extent that they are applicable." § 3582(c)(1)(A). Those factors are: "the nature and circumstances of the offense and the history and characteristics of the defendant," *id.* § 3553(a)(1), and the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; "to afford adequate deterrence to criminal conduct"; and "to protect the public from further crimes of the defendant," *id.* § 3553(a)(2)(A)-(C).

Start with the nature and circumstances of Thomas' offenses and his history and characteristics. *Id.* § 3553(a)(1). Thomas was selling heroin while in possession of a loaded

10

firearm. [PSR ¶¶ 12–18.] Those convictions are the latest of drug-trafficking convictions that Thomas has amassed over the course of his life. Indeed, he is a career drug dealer. *United States v. Teal,* 2021 WL 2374360, at *4 (D.N.J. June 10, 2021) (denying compassionate release, reasoning that the § 3553(a) factors weighed against release where defendant "has literally led a life of crime, primarily consisting of drug dealing"). That Thomas possessed a loaded firearm while dealing drugs shows an escalating pattern of violent conduct. *See United States v. Johnson*, 2022 WL 3152656, at *3 (D.N.J. Aug. 8, 2022) (denying compassionate release, finding the "nature and circumstances of [defendant's] offense . . . serious" where defendant possessed a loaded firearm while engaging in drug sales despite a history of felony convictions). On top of his drug-trafficking convictions, Thomas has convictions for violent offenses: manslaughter and aggravated assault.

At sentencing, the Court found Thomas' criminal history reflected a cavalier attitude toward the rule of law and his prior incarceration had little deterrence effect on him. Indeed, the Court found that Thomas' "deplorable" criminal history suggested that he "walked out of the prison gates and say okay, what crime can I commit now?" [Sentencing Hr'g Tr. 36:4 to 13.] And even though the Sentencing Guidelines career offender enhancement applied, the Court showed Thomas leniency by varying from the Guidelines sentence. Given Thomas's significant criminal history and his recidivism, a reduction to an already shorten sentence is not appropriate. See *United States v. Tutis*, 2023 WL 4993193, at *2 (3d Cir. Aug. 4, 2023) (summarily affirming a denial of compassionate release where defendant was a "career offender and lifelong drug dealer" who had already benefitted from a downward variance from the Sentencing Guidelines).

11

Turning to "the need for the sentence imposed" to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense[,]" to deter criminal conduct, and to protect the public, 18 U.S.C. § 3553(a)(2)(A)-(C), the Court finds these factors weigh heavily against early release. The sixteen-and-a-half-years Thomas already spent incarcerated for his various state convictions did not deter him from reoffending.

Worse, Thomas still does not appreciate the gravity of the crimes that he has committed. While Thomas recognizes that "[t]here is no excuse for his actions" and that "he has learned to respect the rule of law," he downplays the severity of his conduct by explaining that he was sentenced for "$200 bucks worth of drugs, and a firearm that presented no danger to anyone." [Def. Br. at 1, 5, 12–13.] Thomas sold drugs—"poison" as this Court previously put it, Sentencing Hr'g Tr. 33:14 to 15—and he did so with a loaded gun. Thomas' conduct threatened the safety of the community.

What's more, Thomas has more than five-years remaining on his sentence. *United States v. Pawlowski*, 967 F.3d 327, 331 (3d Cir. 2020) (explaining district courts may consider the time remaining on a defendant's sentence to determine whether compassionate release is appropriate). This Court already shaved off more than 100 months from his recommended Guidelines sentence by varying downward after considering the § 3553(a) factors. Those factors do not support another reduction. *See United States v. Ramos*, 840 F. App'x 672, 674 (3d Cir. 2021) (summarily affirming denial of compassionate release, reasoning "it was reasonable for the District Court to conclude that the fact that [defendant] still had about five-and-a-half years of his sentence remaining worked against him" (footnote omitted)).

12

In sum, reducing Thomas' sentence would not reflect the seriousness of his conduct, promote respect for the law, protect the public, and deter Thomas from reoffending. Thus, the § 3553(a) factors do not support release.

## III. CONCLUSION

For the above reasons, this Court **DENIES** Thomas' Motion for Compassionate release[3] (Docket No. 103). An accompanying Order of today's date shall issue.

<u>s/Renée Marie Bumb</u>
RENÉE MARIE BUMB
Chief United States District Judge

Dated: August 11, 2025

---

[3] Because Thomas' compassionate release motion lacks "merit in fact and law[,]" the Court denies his request to appoint counsel. *United States v. Balter*, 2024 WL 2105553, at *5 (D.N.J. May 9, 2024) (denying motion to appoint counsel where compassionate release motion lacked merit), *aff'd*, No. 24-1988, 2024 WL 4274350 (3d Cir. Sept. 24, 2024), *cert. denied*, 145 S. Ct. 789 (2024); *see also United States v. Herd*, 2025 WL 1937602, at *5 (D.N.J. July 15, 2025) (declining to appoint counsel where defendant's compassionate release motion lacked merit).